BERRY AND AL. ads. VREELAND.

1. In actions for torts to the person where there is no measure of damages ex-cept the discretion of the jury, the courts seldom or never set aside verdicts for mere excess of damages.

2. In actions for torts to property without malice, or injury to the person or feelings, the real injury is the standard for the measure of damages, the measure of damages becomes a question of law, and is therefore under the control of the court.

3. In support of a plea of justification to trespass *quare cl. fr.* laid with *continuances*, the proof must be co-extensive with the plea; if the defendant fails in proof of his justification to any part of the trespasses, plaintiff is entitled to a verdict without *new assigning* the excess.

4. The office of a *novel assignment* is to avoid the effect of an *evasive* plea. It is of no use when the plea answers the identical trespasses complained of.

This cause came before the Court upon the argument of a rule to shew cause why the verdict should not be set aside and a new trial granted.

Argued before the CHIEF JUSTICE, and NEVIUS J. at April Term, 1848.

*Zabriskie* and *Vroom*, for defendant in support of the rule.

*W. Halsted*, contra.

The CHIEF JUSTICE delivered the opinion of the court.

This was an action of trespass *quare clausum fregit*, tried at the Hudson Circuit at March Term 1845. The plaintiff complained that the defendants, on the 17th of August, 1843, and on divers other days between that day, and the commencement of the suit broke and entered the plaintiff's close, and there dug and carried away large quantities of earth, gravel and stone, and brought and deposited thereon large quantities of earth, gravel, and stone, and dug large ditches, drains and sluices, and thereby caused the water which fell during the rains to flow over upon the said close, and upon adjoining closes of the plaintiff, so that the same were thereby washed, and injured, the grain, grass, herbage, and trees destroyed, &c. the soil rendered less fertile, and large quantities of earth thrown against the barn, and into the cider mill of the plaintiff, being upon the said close.

A. J. Berry, one of the defendants, pleaded the general issue. All the defendants justify the alleged trespass by pleading,

1. That the *locus in quo* was part of a public highway, and that the defendants entered thereon as the servants, and by the command of the overseer of said highway for the purpose of repairing and amending the same, and other highways in said

township, and that for that purpose they removed the earth, dug the ditches, and made the embankments, complained of in the plaintiff's declaration.

2. That the said highway, and other adjoining highways were foundrous, out of repair, and impassable, and that the defendants having occasion to pass over the said highway, and other adjoining highways, for the purpose of amending the same, so that he might be able to pass along the said highways, did the acts complained of in the plaintiff's declaration.

On the trial, the defendant's counsel called upon the court to charge the jury, that if any part of the trespass was committed for the purpose in the special pleas mentioned, or could be justified by them, the plaintiff could not in these pleadings recover for the excess, but that it must be new assigned. The court charged the jury, among other things, that the justification must be co-extensive with the trespass, and for any trespass beyond the justification the plaintiff could recover. A verdict was rendered for the plaintiff, and his damages assessed at $300.

The defendants ask for a new trial—

1. Because the damages are excessive.

2. Because the Court erred in charging the jury.

I. It appears by the evidence that the farm of the plaintiff is crossed by a road running nearly north and south along the eastern slope of Berry's hill, called the Polifly road. On the north line of the plaintiff's farm, it is bounded and separated from the defendant's land by the turnpike which crosses the Polifly road nearly at right angles, having its descent toward the east. In August, 1843, the roads at the point of intersection being out of repair, John A. Berry, one of the defendants, and the others as his servants, with the assent of the overseer of the highways, undertook to make repairs. For this purpose, or under this pretext, he cut a ditch south of the turnpike, in and along the Polifly road, over the plaintiff's land, eight or nine panels of fence in length, and threw up an embankment across the turnpike on the east side of the Polifly road, so that the water which formerly flowed easterly down the turnpike from the point of intersection of the two roads, was turned southerly down the Polifly road, and afterwards flowed over upon the adjoining lands

of the plaintiff, doing the damage complained of in the declaration. After remaining in this situation six or eight weeks, the overseer, by an embankment thrown across the highway restored the water to its accustomed channel. In the meantime several rains had fallen, which caused the injury complained of.

It appears by the evidence that the road needed repairs. The work was done not only with the assent, but to a considerable extent, under the eye of the overseer. He was there several times when it was in progress. No complaint is made of the manner in which the work was done, except that the water was diverted from its accustomed flow eastward, and turned down the highway, so as to flow on the plaintiff's land and do him an injury. This was done without the consent and against the will of the overseer, although it does not appear that he objected to its being done, nor that he was aware that it was contemplated. The whole injury complained of was occasioned by this diversion of the water. There was no entry upon the plaintiff's possession beyond the limits of the highway—no wanton violation of his rights—no outrage upon his person or his feelings, nor upon those of his family. There is no evidence proving that the act was malicious  The damages proven were that sand and gravel were scattered over about one quarter of an acre of the plaintiff's land. Dirt six or eight inches deep was washed into the cider house which was used as a shelter for cattle. Dirt was also washed against the carriage-house, so that it became necessary to turn the building round. The expense of removing the sand and dirt was from ten to twenty dollars.

The cider-house, the carriage-house and the enclosure upon which they stand, were in the possession, not of the plaintiff, but of his son George E. Vreeland, by whom they were used. It does not appear from the evidence, whether the sand was removed from this part of the premises, at his expense, or at the expense of the plaintiff.

So far as the plaintiff was concerned, the gravamen of his complaint consists in having sand and gravel thrown over about one quarter of an acre of his land. The whole value of the land did not exceed $150 per acre. No crop appears to have been injured. The only witnesses on the part of the plaintiff

who testify as to the amount of damages, are his sons. They agree in saying that the plaintiff would not have taken $50 less for the farm after the injury than before. He might, perhaps, (they say) have taken $20 less, as it would cost that to remove the sand. For this injury the jury have rendered a verdict of $300 damages. These damages appear to me so excessive, so entirely unwarranted by the evidence, and so disproportionate to the injury done, as to demand the interference of the court, and the granting of a new trial. They warrant the belief that the jury acted under some erroneous impression or undue influence. In such cases, a new trial will always be granted, whatever may be the form of the action, or the nature of the injury.

The court in actions of trespass, especially for personal torts, when damages can be gauged by no fixed standard, but necessarily rest in the sound discretion of the jury, interferes with a verdict on the mere ground of excessive damages with reluctance, and never, except in a clear case. But when the plaintiff complains of no injury to his person or his feelings—where no malice is shown—where no right is involved beyond a mere question of property—where there is a clear standard for the measure of damages, and no difficulty in applying it—the measure of damages is a question of law, and is necessarily under the control of the court.

In the present case the verdict is rendered for $300. The utmost damages proved to have been sustained by the plaintiff do not amount to $50. It is true that two of the plaintiff's witnesses—his sons—say that they would not have had the damage done for $500 or $600 ; but neither of them allege that any such damages were actually sustained ; on the contrary, they both clearly prove that the actual damage to the plaintiff's property did not amount at the utmost to $50. The damages rendered are clearly excessive. Upon this ground the verdict must be set aside, and a new trial granted upon the payment of costs.

It is further urged as a reason for setting aside the verdict, that the court erred in charging the jury that the justification must be co-extensive with the trespass, and that for any trespass beyond the justification the plaintiff could recover. It is insisted

on the part of the defendant, that if part of the trespass could be justified by the pleas, the plaintiff could not, under the pleadings in the cause, recover for the excess; but that such excess must be new assigned.

But upon this point I perceive no error in the charge of the court. The plaintiff complains of trespass as committed on the 17th day of August, 1843, and on divers days and times, between that day and the commencement of this suit. The defendants plead that the said close in which, &c. *at the said several times when,* &c. was part of the public highway, that the said public highway upon the close aforesaid, and other parts of the said public highway adjoining thereto, were at the times when, &c. foundrous, out of repair, and impassable, wherefore the defendants as the servants, and by the command of the overseer of the highways, *at the time when,* &c. entered upon said close for the purpose of repairing and amending the said public highway. There is another similar plea, except that it omits the averment that the defendants acted as the servants and by the command of the overseer. To each of these pleas the plaintiff replies, by the traverse *de injuria sua propria absque tali causa.* The plea is that each of the acts complained of, and attempted to be justified, were done by authority of the overseer for the purpose of repairing the highways. The justification is not pleaded to a part of the trespasses, but to all. The replication *absque tali causa,* puts in issue not the mere fact of the defendant's entry upon the close, by authority of the overseer to repair the roads, but whether each and all of the acts complained of, and attempted to be justified, were done by that authority and for that purpose. The justification as pleaded, is co-extensive with the trespasses complained of, and the defendants were bound to support the plea by their evidence. The case is directly within the authority of *Barnes* v. *Hunt,* 11 *East.* 451; 1 *Chit. Pl.* 628 (7 *Am. Ed.*)

There would seem to be neither necessity or propriety in the plaintiff's new assigning the trespasses. The office and design of a *novel assignment* is to avoid the effect of an evasive plea. 3 *Bl. Com.* 311; 1 *Chit. Pl.* 610 (7 *Am. Ed.*)  *Gould's Pl. c.* 8, § 75.

It accomplishes its purpose by assigning the injury afresh in such manner as clearly to ascertain and identify the wrong complained of. It distinguishes the true ground of complaint as being *different* from that which is covered by the plea. *Steph. on Plead.* 245 ; 1 *Chit. Pl.* 663 ; 3 *Blac. Com.* 311. And therefore a novel assignment must in general conclude with an averment that the wrongs or causes of complaint alleged in it, are *other and different* from those mentioned in the plea. For otherwise a new assignment is unnecessary—and so are the precedents. 1 *Saund.* 299, *note* 6 ; *Lawes' Pl.* 164, 240 ; *Gould's Pl. c.* 6, § 110, *note* 14; 3 *Chit. Pl.* 1213, 1218.

In the present instance, if the plaintiff had sought to recover damages for trespasses committed without the highway, the pleas would have been evasive, and a novel assignment would have been necessary. But the pleas were not evasive. They justified the very trespass of which the plaintiff complained. A novel assignment could not have distinguished the real causes of complaint as being different from those covered by the plea. It could but have re-affirmed the causes of complaint contained in the declaration, and would therefore have been useless and improper.

Rule absolute, upon the payment of costs by the defendants.