16 N.J. Super. 128 (1951)
84 A.2d 11
LOUISE PAPARAZZO, PLAINTIFF-RESPONDENT,
v.
MAX H. PERKEL, INDIVIDUALLY AND TRADING AS CRYSTAL BAR & GRILL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1951.
Decided October 24, 1951.
*130 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Jacob E. Max argued the cause for the plaintiff-respondent (Mr. Abraham J. Slurzberg, of counsel).
Mr. Elmer J. Bennett argued the cause for the defendant-appellant (Messrs. Carpenter, Gilmour & Dwyer, attorneys; Messrs. Patrick A. Dwyer and James P. Beggans, of counsel).
The opinion of the court was delivered by EASTWOOD, J.A.D.
This is an appeal from a judgment in the sum of $3,000 in favor of the plaintiff and against the defendant in an action for personal injuries sustained by plaintiff.
The parties are in substantial agreement as to the circumstances surrounding the causation of plaintiff's injuries. The question of liability is not disputed. On December 24, 1950, plaintiff and several companions were seated at one end of the bar of defendant's tavern when an altercation occurred between patrons at the other end of the bar. The bartender attempted to quell the disturbance, and in doing so, while on top of the bar, stepped on a glass, as a consequence of which the plaintiff sustained a severe laceration of the index finger of her right hand. She was taken to the Jersey City Medical Center, where the injury was treated and sutured. On December 30, 1950, when she returned to the hospital to have the stitches removed, it was discovered that an infection had developed and she was confined to the hospital for 19 days for treatment. Thereafter, plaintiff was treated by Dr. Steiner on several occasions. Approximately one year later, plaintiff was treated by Dr. Harry Ajamian for a "re-infection" of the injured finger.
*131 The defendant contends that (1) the admission of Dr. Ajamian's testimony concerning the injury and treatment to plaintiff's finger in January, 1951, was erroneous and harmful to defendant in that it may well have led the jury to overestimate the extent of the disability proximately flowing from the accident, and that Dr. Ajamian's bill was improperly considered as an out-of-pocket expense; and (2) the jury's verdict of $3,000 is grossly excessive.
We are of the opinion that Dr. Ajamian's testimony was properly admitted. A justifiable inference is properly drawn from the plaintiff's testimony that she did not suffer any intervening accident between the incident of December 24, 1950, and the re-infection that occurred in January, 1951, and there is no contrary evidence. Dr. Ajamian testified he treated the plaintiff "For a re-infection of an old injury to her right index finger"; that he found "The condition of the finger would indicate to any physician that there was a previous injury on that area"; that plaintiff's finger is practically rigid; it seriously interferes with plaintiff obtaining employment, and the medical prognosis is that her finger will be stiff and practically useless for the rest of her life. The doctor based his diagnosis, findings and prognosis upon the history given him by the patient, the X-rays and medical reports he obtained from the Jersey City Medical Center, as well as upon his contemporaneous examination and treatment of the injured finger.
The defendant's objection to the admission of the doctor's testimony was made in a very general manner and not until after Dr. Ajamian had, without objection, stated that he had examined her "For a re-infection of an old injury to her right index finger." The objection was couched in the following language:
"Your Honor, I don't like to be persistent in objections but I object to this doctor's testimony unless it is tied up by the physician who treated this plaintiff prior to this time, since this accident happened in December, 1949.

* * * * * * * *
*132 I object to that, if the Court please. The amount of this doctor's bill is no proof that the treatment this doctor gave to this plaintiff a year after the accident is binding on this defendant."
In view of our conclusion that it may be reasonably inferred from the plaintiff's testimony that she had suffered no intervening mishap to her finger, the testimony of Dr. Ajamian, who testified both as the treating physician and as an expert, was admissible. Even if it be assumed that the final conclusions of an expert were based in part on the hearsay laboratory report, relief could not be granted because the objection interposed was to all of the doctor's testimony and this was too broad. Where a substantial portion of the evidence of an expert witness is based on personal study and experience, a motion to strike any of it as hearsay must particularize the part or parts objected to. See State v. Alexander, 7 N.J. 585 (1951). Additionally, we find that there was no timely objection to its admission. Therefore, the defendant is not entitled to press it on appeal. The controlling rule is, as stated in Slovak Catholic Sokol v. Foti, 13 N.J. Super. 458, 461 (App. Div. 1951):
"It should be unnecessary so often to repeat that under our new rules, unless jurisdiction or public policy is involved, the principle persists that in a civil case a party shall not be heard in an appellate court upon a point not raised or considered in the court below. So, in the absence of timely and proper objection at the trial to the admissibility of the challenged evidence, there is no legal error before us on which to ground an appeal however we may view the competency of that testimony." (See cases cited therein.)
As to defendant's second ground of appeal, giving due regard to the extent of plaintiff's injuries, the pain and suffering attendant thereon, the out-of-pocket expenditures, the interference with employment and the permanency of the injury, coupled with the deflated value of the dollar, we find that the amount of the verdict is not so excessive as to shock our reason and conscience.
*133 "The admeasurement of compensatory damages in actions for the injurious consequences of personal torts is not gauged by any established graduated scale. In our procedure the appraisal is entrusted to the sound discretion of the jury. Thus it has long been the practice of our courts to refrain from interfering with a verdict on the mere ground of excessive damages unless the award is manifestly unsupported by the evidence and obviously unjust. Vreeland v. Berry, 21 N.J.L. 183, 187 (Sup. Ct. 1847); Salvato v. N.J. Asphalt & Paving Co., 135 N.J.L. 185, 189 (E. & A. 1947)." Dandrea v. Centofante, 13 N.J. Super. 445, 447 (App. Div. 1951).
"In addition, the jury in calculating the amount of damages that would reasonably and properly compensate the plaintiff were warranted in giving consideration to existing economic conditions, to wit: the high cost of living and the decrease in the purchasing power of the dollar. Nusser v. United Parcel Service of N.Y., Inc., supra." Bardack v. Extract, 13 N.J. Super. 350, 356 (App. Div. 1951).
The judgment is affirmed.